1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN J. KEEN, et al.,

          Plaintiffs,

    v.

JPMORGAN CHASE BANK, N.A.,

          Defendant.

Case No. 15-cv-01806-WHO

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 35

## INTRODUCTION

This is a putative class action asserting a single claim for relief under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* Plaintiffs Kevin Keen, Tamra Keen, Curt Conyers, and Kelly Conyers (collectively, "plaintiffs") are co-borrowers on a mortgage loan from defendant JPMorgan Chase Bank, N.A. ("Chase"). They accuse Chase of violating TILA by failing to disclose to them the finance charge they would hypothetically incur if Chase were to apply a particular method of calculating interest on their loan. They do not allege that Chase has applied this method or that it intends to do so. Nor do they allege that the method Chase actually uses is improper, or that Chase's disclosures regarding the finance charge plaintiffs will incur under this method are inaccurate or otherwise deficient. Chase moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim.

Because I find that TILA did not require Chase to disclose to plaintiffs the finance charge they would incur under an interest calculation method that, according to plaintiffs' allegations, Chase does not use and does not intend to use, the motion to dismiss is GRANTED.

United States District Court
Northern District of California

**BACKGROUND**

Plaintiffs are co-borrowers on a $203,115.00 promissory note dated November 25, 2014. First Amended Complaint ¶ 5 (Dkt. No. 30) ("FAC").  The note is secured by a deed of trust on a property in Turlock, California.  *Id.*  The note identifies Chase as the lender and states that interest will be paid at a yearly rate of 5.125 percent.  *Id.* ¶¶ 5-6.

Plaintiffs attach copies of the note and deed of trust to the FAC.  The note provides in part:

> I will make my monthly payments on the 1st day of each month beginning on January 1, 2015. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note . . . If, on December 1, 2044, I still owe amounts under this note I will pay those amounts in full on that date . . . My monthly payment will be in the amount of U.S. $ 1,105.94.

FAC Ex. 1 (Dkt. No. 30).

The deed of trust similarly provides in part:

> The note states that Borrower owes Lender two hundred three thousand one hundred-fifteen and 00/100 dollars (U.S. $203,115.00) plus interest. Borrower has promised to pay this debt in regular periodic payments and to pay the debt in full not later than December 1, 2044.

FAC Ex. 2 (Dkt. No. 30).

Plaintiffs also attach to the FAC a copy of the TILA disclosure statement that Chase allegedly provided to them.  In line with the note and deed of trust, the disclosure statement explains that the yearly interest rate on the loan is 5.125 percent, the monthly payment amount is $1,105.94, and the finance charge is $195,104.49.  *See* FAC Ex. 5 (Dkt. No. 30).

TILA requires a creditor in a consumer credit transaction to disclose the finance charge to the borrower.  *See* 15 U.S.C. § 1638(a)(3).  Under 12 C.F.R. § 1026.18(d)(1)(i),

> [i]n a transaction secured by real property or a dwelling, the disclosed finance charge . . . shall be treated as accurate if the amount disclosed as the finance charge . . . is understated by no more than $100.

12 C.F.R. § 1026.18(d)(1)(i).[1]  Plaintiffs allege that Chase failed to comply with this requirement, making Chase liable for statutory damages under 15 U.S.C. § 1640(a).  *See* FAC ¶¶ 22-23.

---

[1] 12 C.F.R. § 1026.18(d)(1)(i), as well as 12 C.F.R. § 1026.17(c)(3), discussed in detail below, are part of Regulation Z, 12 C.F.R. § 1026.1 *et seq.*, which was "promulgated by the Board of

2

United States District Court
Northern District of California

Plaintiffs' theory of liability is somewhat complicated and is not very well explained in the FAC, although their opposition brief helps flesh out their reasoning.  As background information, there are three different methods generally used to calculate interest on loans: the 365/365 method, the 360/360 method, and the 365/360 method.  *See Am. Timber & Trading Co. v. First Nat. Bank of Oregon*, 511 F.2d 980, 982 n.1 (9th Cir. 1973).  Under the 365/365 method, the yearly interest rate is divided by 365, producing a daily interest rate which is then multiplied by the number of applicable calendar days.  *Id.*  Months of different lengths thus produce different interest charges. *Id.*  The 360/360 method is similar except that each month is assumed to have exactly 30 days, meaning that the yearly interest rate is divided by 360 instead of 365.  *Id.*  Each month thus produces the same interest charge, regardless of its number of calendar days.  *Id.*  The 365/360 method is a hybrid of the other two.  Under this method, the yearly interest rate is divided by 360, producing a daily interest rate which is then multiplied by the number of applicable calendar days, without assuming that each month has exactly 30 days.  *Id.*  While the 365/365 method and 360/360 method produce overall interest charges that are "exactly the same," the 365/360 method produces a greater overall interest charge.  *Id.*

Under the terms of the note at issue here, plaintiffs must pay $1,105.94 per month, irrespective of the number of days in the month.  This indicates that Chase is using the 360/360 method to calculate interest (although plaintiffs do not specifically identify in the FAC what method Chase is using).  Plaintiffs do not claim that Chase's use of the 360/360 method is improper, or that its disclosures regarding the finance charge that plaintiffs will incur under that method are inaccurate or otherwise deficient.  Rather, plaintiffs allege that *if Chase were to apply the 365/360 method*, then their finance charge would be "not less than $202,779.44," significantly higher than the $195,104.49 that was disclosed to them.  *See, e.g.,* FAC ¶¶ 7-9.  Plaintiffs do not allege that Chase has applied the 365/360 method, or that it intends to do so (or ever intended to do so) at any time in the future.  To the contrary, plaintiffs specifically allege that Chase has stated that it "would never enforce" the loan in this manner.  *Id.* ¶ 14.  Nevertheless, plaintiffs contend

Governors of the Federal Reserve System . . . pursuant to its authority under [TILA]," *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 197 (2011).

1   that Chase was required under TILA to disclose the finance charge they would incur under the

2   365/360 method.  This is the only claim for relief in the FAC.  *See* FAC ¶¶ 22-23.

3        Plaintiffs filed their original complaint on April 21, 2015 and their FAC on July 14, 2015.

4   Dkt. Nos. 1, 30.  They bring the TILA claim on behalf of themselves and on behalf of a putative

5   class of California residents who obtained Fannie-Mae-approved residential mortgage loans from

6   Chase.  *See* FAC ¶ 16.  Chase moved to dismiss on August 28, 2015.  Dkt. No. 35 ("Mot.").  I

7   heard argument from the parties on October 14, 2015.  Dkt. No. 40.[2]

8                                    **LEGAL STANDARD**

9        Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain

10  statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in

11  order to "give the defendant fair notice of what the claim is and the grounds upon which it rests,"

12  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations

13  omitted).

14       A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

15  12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

16  2001).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable

17  legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela*

18  *Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  While a complaint "need not contain

19  detailed factual allegations" to survive a Rule 12(b)(6) motion, "it must plead enough facts to state

20  a claim to relief that is plausible on its face."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th

21  Cir. 2009) (internal quotation marks and citations omitted).  A claim is facially plausible when it

22  "allows the court to draw the reasonable inference that the defendant is liable for the misconduct

23  alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

24       In considering whether a claim satisfies this standard, the court must "accept factual

25  allegations in the complaint as true and construe the pleadings in the light most favorable to the

26  nonmoving party."  *Manzarek v. St. Paul Fire & Marines Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

27

28  _____
    [2] Plaintiffs' unopposed request for judicial notice of various documents filed in other cases
    pending in this district and in the United States Supreme Court is GRANTED.  *See* Dkt. No. 37.

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    2008).  However, "conclusory allegations of law and unwarranted inferences are insufficient to

2    avoid a Rule 12(b)(6) dismissal."  *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted).

3    "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too

4    speculative to warrant further factual development."  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076

5    (9th Cir. 2013).

6                                    **DISCUSSION**

7            Chase makes two arguments in support of dismissal.  It argues (1) that plaintiffs' claim is

8    not sufficiently ripe to qualify as a justiciable case or controversy, Mot. at 11-13; Reply at 4-8

9    (Dkt. No. 38); and (2) that the claim fails on the merits, because TILA did not require Chase to

10   disclose to plaintiffs the finance charge they would hypothetically incur under the 365/360 method

11   in the event that Chase were to apply it, Mot. at 13-19; Reply at 8-14.  While I am satisfied that

12   this issue is sufficiently ripe to provide subject matter jurisdiction, I agree with Chase that

13   plaintiffs' claim fails on the merits.

14           Plaintiffs' theory of liability rests on the Federal Reserve Board official staff interpretation

15   of 12 C.F.R. § 1026.17(c)(3).[3]  Section 1026.17(c)(3) itself provides in relevant part that, "in

16   making calculations and disclosures," a creditor "may disregard the effects of," among other

17   things, "[t]hat months have different numbers of days" and "[t]he occurrence of leap year[s]."  *Id.*

18   The official staff interpretation of section 1026.17(c)(3), titled "Minor Variations," explains that

19   the section "allows creditors to disregard certain factors in calculating and making disclosures."

20   12 C.F.R. Pt. 226, Supp. I, Subpart C, Paragraph 17(c)(3).  Thus,

21               [c]reditors may base their disclosures on calculation tools that
                assume that all months have an equal number of days, even if their
22              practice is to take account of the variations in months for purposes
                of collecting interest. For example, a creditor may use a calculation
23              tool based on a 360-day year, when it in fact collects interest by
                applying a factor of 1/365 of the annual rate to 365 days. This rule
24              does not, however, authorize creditors to ignore, for disclosure
                purposes, the effects of applying 1/360 of an annual rate to 365
25              days.

26

27   [3] "[D]eference is especially appropriate in the process of interpreting [TILA] and Regulation Z.
     Unless demonstrably irrational, Federal Reserve Board staff opinions construing [TILA or
28   Regulation Z] should be dispositive."  *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565
     (1980).

*Id.*

Plaintiffs focus on the final sentence of the interpretation.  They argue that the sentence demonstrates that under TILA, a creditor must always disclose the effects of applying the 365/360 method, irrespective of whether the creditor actually uses that method to calculate interest on the loan at issue.  *See* Opp. at 2-3 (Dkt. No. 35).  Plaintiffs cite no case or other authority that has read the final sentence of the interpretation, section 1026.17(c)(3) itself, or any other portion of Regulation Z or TILA in this way.

Chase responds that the interpretation's final sentence indicates that disclosure of the effects of applying the 365/360 method is required only where the creditor actually applies that method.  *See* Reply at 8-10.  Chase focuses on the interpretation's use of the phrases, "even if their practice is . . . " and "when it in fact collects interest by applying . . . "  *See id.*  According to Chase, these references to creditors' actual practices – as opposed to their hypothetical or possible ones – indicate that the disclosure requirement described by the interpretation's final sentence is limited to circumstances where the creditor's actual practice is to use the 365/360 method.

Chase has the better of these arguments.  I agree with Chase that, read in context, the interpretation's final sentence is best understood as referring only to circumstances where the creditor's actual practice (or, perhaps, its actual intent) is to use the 365/360 method.  This understanding conforms not only with the language of the interpretation as a whole, but also with the Federal Deposit Insurance Corporation ("FDIC")'s and the Office of the Comptroller of the Currency ("OCC")'s commentaries on Regulation Z.  Both the FDIC's "Compliance Examination Manual" and the OCC's "Comptroller's Handbook" use the following language to explain section 1026.17(c)(3):

> Confusion often arises over whether to use the 360-day or 365-day year in computing interest . . . Regulation Z does not require the use of one method of interest computation in preference to another (although state law may). It does, however, permit financial institutions to disregard the fact that months have different numbers of days when calculating and making disclosures. This means financial institutions may base their disclosures on calculation tools that assume all months have an equal number of days, even if their practice is to take account of the variations in months to collect interest.

United States District Court
Northern District of California

For example, a financial institution may calculate disclosures using a financial calculator based on a 360-day year with 30-day months, when, in fact, it collects interest by applying a factor of 1/365 of the annual interest rate to actual days.

Disclosure violations may occur, however, *when a financial institution applies a daily interest factor based on a 360-day year to the actual number of days between payments. In those situations*, the financial institution must disclose the higher values of the finance charge, the [annual percentage rate], and the payment schedule resulting from this practice.

FDIC Compliance Examination Manual, Truth in Lending Act at V-1.19 (May 2015) available at www.fdic.gov/regulations/compliance/manual/5/V-1.1.pdf (last visited October 15, 2015) (emphasis added); OCC Comptroller's Handbook, Consumer Compliance, Truth in Lending Act at p.30 (Dec. 2014) available at www.occ.gov/publications/publications-by-type/comptrollers handbook/truth-in-lending-handbook.pdf (last visited October 15, 2015) (emphasis added). These publications, like the Federal Reserve Board official staff interpretation of section 1026.17(c)(3), indicate that the obligation to disclose the effects of applying the 365/360 method arises only "[i]n those situations" where the creditor actually applies it.

Plaintiffs' position would also conflict with section 1026.17(c)(3) itself. As stated above, the section provides that, "in making calculations and disclosures," creditors "may disregard the effects of," among other things, "[t]hat months have different numbers of days" and "[t]he occurrence of leap year[s]." 12 C.F.R. § 1026.17(c)(3). If creditors were always required to disclose the effects of applying the 365/360 method, however, they would not be able to disregard this information. To the contrary, they would consistently have to provide a disclosure explaining that the extra five days (or six days, in leap years) included in the interest calculation under the 365/360 method would result in greater costs for the borrower. Creditors would be required to provide such a disclosure even where they did not use the 365/360 method and did not intend to do so. It is not clear when, if ever, they would be able to disregard the effects of different months having different numbers of days, or of leap years.

Moreover, for a disclosure of the effects of applying the 365/360 method to make sense to borrowers (in situations where that method was merely a hypothetical possibility and not the method actually applied by the creditor) the disclosure would presumably need to include an

7

explanation of how the 365/360 method functions in comparison to the method actually applied. This would presumably require creditors to disclose and explain not only the 365/360 method, but also whatever method they actually used. As plaintiffs themselves point out in the FAC, however, TILA does not require creditors to disclose their "particular method for computing interest." *See* FAC ¶ 10; *see also Haynes v. Homeq Servicing Corp.*, No. 04-cv-01081, 2006 WL 2167375, at *7-14 (M.D. Tenn. Aug. 1, 2006) (dismissing TILA cause of action predicated on creditor's nondisclosure of its particular method of computing interest; stating that "[TILA's] purpose is not served by requiring lenders to make disclosures, such as the one at issue, that will make no difference in the overall cost of credit in most situations"). This highlights one of the odder aspects of plaintiffs' claim: they seek to establish a rule that would effectively require creditors to disclose detailed information regarding an interest calculation method that the creditors *do not apply*, yet they concede that creditors are *not* required to disclose the interest calculation method that they *do* apply.

Finally, I am not persuaded that the disclosure requirement plaintiffs seek to impose would serve TILA's purpose of "assuring meaningful disclosure of credit terms to consumers." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980). As the Supreme Court has explained, "[m]eaningful disclosure does not mean more disclosure. Rather, it describes a balance between competing considerations of complete disclosure and the need to avoid informational overload." *Id.* at 568 (internal emphasis and alterations omitted); *accord Household Credit Servs. Inc. v. Pfennig*, 541 U.S. 232, 243 (2004). Plaintiffs fail to articulate how inundating borrowers with arcane information regarding an interest calculation method that is not applied to them, and that will not foreseeably be applied to them, would reflect an appropriate accommodation between "the conflicting demands for completeness and for simplicity" that TILA seeks to balance. *Milhollin*, 444 U.S. at 569. I agree with Chase that, in all likelihood, it would not.

Plaintiffs' counterarguments are not convincing. In their opposition brief, they point to another portion of Regulation Z, 12 C.F.R. § 1026.17(c)(1), which provides that TILA disclosures "shall reflect the terms of the legal obligation between the parties." 12 C.F.R. § 1026.17(c)(1).

United States District Court
Northern District of California

1    Given that section 1026.17(c)(1) is followed by the far more specific and on point section

2    1026.17(c)(3), which the staff of the Federal Reserve Board has interpreted as described above,

3    section 1026.17(c)(1) does not provide a compelling reason for imposing the 365/360 method

4    disclosure requirement urged by plaintiffs.

5        Plaintiffs also cite to *F.T.C. v. AMG Servs. Inc.*, 29 F. Supp. 3d 1338 (D. Nev. 2014), for

6    the proposition that under TILA, a creditor "must assume the worst that could happen under the

7    ambiguous terms of the . . . note for the purposes of calculating the finance charge." Opp. at 20.

8    But that case, unlike this one, involved disclosures that were found to be ambiguous and

9    misleading in light of the defendants' actual practices, not its hypothetical or possible ones.

10   Under the terms of the payday loans at issue in that case, "if a borrower of a $300.00 loan . . .

11   fail[ed] to successfully opt out of the [automatic] renewal plan" – the terms of which were

12   "scattered throughout the dense text below the TILA box" – then "his or her total payments would

13   actually total $975.00 rather than the $390.00 shown in the TILA box." 29 F. Supp. 3d at 1345.

14   "While borrowers technically ha[d] the ability to decline enrollment in the automatic renewal

15   plan, the mechanism for declining enrollment [was] controlled by the defendants through a

16   convoluted email and hyperlink procedure." *Id.* The district court found that "the terms in the

17   [loans] regarding the automatic renewal plan were likely to mislead because they implied in the

18   prominent TILA box that only one finance charge would be incurred while the fine print created a

19   process under which multiple finance charges would be automatically incurred unless borrowers

20   [took] affirmative action." *Id.* at 1354-55. In other words, the TILA disclosures at issue failed to

21   clearly and conspicuously disclose the actual terms of the loans and the actual finance charges the

22   borrowers could be expected to incur (and, indeed, in many instances had incurred). *See id.* at

23   1346. That is not the situation here.

## CONCLUSION

24

25       For the foregoing reasons, the FAC "lacks a cognizable legal theory" and must be

26   dismissed. *Mendiondo*, 521 F.3d at 1104. Chase's motion to dismiss is GRANTED.

27       At oral argument, plaintiffs' counsel stated that plaintiffs' claims are "written up the right

28   way," and that plaintiffs did not seek leave to amend if I dismissed the FAC. Therefore, I find that

1   further amendment would be futile and DISMISS the FAC WITHOUT LEAVE TO AMEND.

2   The Clerk shall enter judgment in Chase's favor and close the file.

3         **IT IS SO ORDERED**.

4   Dated: October 16, 2015



WILLIAM H. ORRICK
United States District Judge

United States District Court
Northern District of California

10